Good morning, Your Honors, and may it please the Court. The case at hand is Erezmendi, and Erezmendi should be controlling in this case. The similarities are, they're nearly parallel cases, and with respect to the initial issue that was found in the Erezmendi case with the ambiguity of the instruction. The instruction was essentially identical to the instruction that was provided in the Erezmendi case, is that there was a likelihood that the application would be deemed abandoned. There is an additional element in this case, and it has to do with the issue of continuance and a meaningful opportunity to respond. And what the Court in Erezmendi found was that there was a lack of a meaningful opportunity to respond because the attorney wasn't provided an opportunity to get a continuance to fill out this application, continuing the deadline that was previously set in the prior hearing. In this case, it's not that attorney preparation was an issue. It was that there was newly presented evidence, newly presented evidence that was, if accepted by the Court, dispositive of establishing alienage and removability. And this evidence was initially requested or brought up, that this would be an issue, at the initial master calendar hearing in July. The I-213 was then not provided in the 90 days that followed that hearing, and it was not presented until the day of the hearing. At that time, having contested the charge and denied the allegations, holding the government to its burden, only at that time was the I-213 presented. The I-213 was used only to show alienage, though, correct? And I don't understand you to be contesting alienage, so I'm having trouble understanding how that admission really caused any prejudice or made a difference. The issue isn't on what it was being introduced to establish. The issue is the opportunity to respond to newly presented evidence. But if you didn't contest alienage and all it was was establishing alienage, then what was the need to respond about? Well, because what you're dealing with is a hearsay document in an I-213. And so when we receive an I-213, the challenge is, is this a document that can be relied upon? Now, initially, it is presumed to be reliable as a business document in immigration proceedings, but there are several bases upon which they can be challenged. One of those bases is, is the evidence, is the information that's contained in it accurate? Is the evidence... But I think the point of the question is, like, nobody questions that it was, right? I mean, I say it's establishing alienage and it's establishing that he entered the United So he gets, he's waiting for the I-213 and then he finally gets it and it says the things that he doesn't really disagree with. So... Well, but there's reasons upon which a document like an I-213 would not be admitted. And that would go to how it's obtained. There could be errors in the document. There could be reasons that it would not be evidence upon which the court can rely. But do you, are you asserting that any of those reasons was present here? We're not asserting that those reasons are present, but what we are asserting is, is that a meaningful opportunity to respond to that is more than offering to allow counsel to step out into the hallway and talk to his clients because the burden... If you didn't have a response, I'm just struggling with why that issue matters. I mean, are you, is there a reason why, I think your other argument is that the asylum applications hadn't been printed. Is there some reason that connects those? Like why, why not bring the asylum applications printed in? Is it a separate point that we should be talking about whether the asylum applications should be printed or the same point? Well, no, I think they're connected, okay? Because filing the asylum, technically the asylum application could have been filed any time during the 90 days leading up to it. The reason that you don't file an asylum application leading up to it is because you're essentially then establishing the government's burden. You're taking on their burden and relieving them of it because it's the I-589, unlike other forms of relief, like a 42B application, which is not signed and sworn to, is a sworn statement and the contents of it would have then established the government's burden. So there was no reason to file it in advance of the hearing and having not had any evidence submitted by the government, as the CAR that was submitted in that case, termination was one of the possible outcomes that could come. If the government fails to present evidence of alienage or removability, we had already been set up to request termination. That was on the CAR. Once the government files the 213s, why didn't you take advantage of the offer of the IJ to trail this hearing to allow the 589s to be filed? See, the issue was, and I appreciate that you brought this up, because I think there's two issues with respect to the offer of trailing. The initial offer of trailing had to do with, I will allow you to step into the hall to discuss the I-213. Now following a decision on the I-213, we did not accept that opportunity, but that was for the purpose of evaluating the I-213. When we went back off the record, there was a conversation where it was made clear to the judge that we are prepared to print off the I-589s and submit it before you leave the bench, exactly as was the offer in Arizmendi. But in Arizmendi, I understand that request to have been made before the IJ issued the IJ's decision. And here, as I read it, it happened after, so it was almost like a request for reconsideration or something. It was like after the decision had been made. It was during. So the proceeding was still going on. But the IJ had already ruled against your client, right? He had ruled on the issue of the I-213, but he had not entered the order of removability. So can you point me to how that's true? That's not how I had understood it, but where is the request then in the record? The request is at page 66 of the CAR. And what you will see is that the judge goes off the record, and we have a conversation off the record where it says he begins to write the oral decision. But the oral decision had not been rendered. And there is an off-the-record conversation. He goes back on the record to enter the decision, and then he provides an opportunity for me to make a record of what was discussed, which is then recorded at page 66, which is that we asked for the opportunity explaining that when we said that we were not prepared to file, we were not talking about with respect to not having applications, only that we needed to print them down. Would you grant us the opportunity to trail to the end of the hearing? I see. So I mean, I guess maybe I just misunderstood this, but it looks like there's no point after which you request to go print that the judge says anything more about the judgment, right? So I thought it had happened already, but you're saying it didn't? No, he had not entered the judgment. He goes back to finish the judgment. He's in the process of entering a judgment, and it says right there that there's an interruption. And then we have an off-record conversation where we're requesting the opportunity to go upstairs, file the applications before the judge is off the bench. He goes back on, finishes the decision, and then provides us an opportunity to make a record of the off-record conversation. So I think what you're saying is that the paragraph that's at the very bottom of page 66, where you're talking about having prepared the I-589 and wanting to print them, that is a restatement of something that you had said in the off-the-record conversation before he finished. Correct. And you can see there, there's an apology that I interrupt the judge before the order is entered. I apologize for interrupting the judge. He excuses my apology, and then he allows me to place on record what was said in the off-record conversation. So in the off-record conversation, there was an offer to file the 589s? That's correct, as documented in the CAR. Do you want to reserve your remaining time? We'll reserve the remaining time. Great. Thank you.  Thank you, Judge. Good morning, Your Honors. May it please the Court, Robin Bleier for Todd Blanch. We think Ars Mendia Medina doesn't control this case, and there's four differences between this case that we're going to point out. In this case, petitioners were represented from the get-go of the hearing. They were informed of the deadline along with their counsel. And Ars Medina, he was pro se, and he only got his counsel shortly before he was due to file the asylum application. Velazquez and counsel, like I said, were both informed of the filing date at that July 2018 hearing. And Ars Medina was pro se, so there was also conversations with the immigration judge that the Court decided in Ars Mendia that he could have been confused about the filing date. In our case, we're saying it's clear, but with Ars Mendia, the I.J. was talking a lot about the ability to obtain an attorney and everything else so that that could have been a pro se alien that they were- I mean, so he knew the date, but he also, as counsel just pointed out, he doesn't have the I-213, and is it really reasonable to expect him to file an asylum application when the government has yet to come up with any evidence that he's removable? I mean, he knows he's removable, but he doesn't know that the government's going to be able to establish that. Your Honor, a lot of times, the NTAs are based on I-213s, and in this case, there was an initial NTA that was issued on March 20th, 2018. That's the same date that the 213s in this record were produced. But they weren't produced to him yet. He didn't have the I-213 until the October hearing. Well, he had the March 20th I-213. He did. But in the initial hearing, he indicated he had that, at least for the father. Can you point me to where in the record that-  I had not- And I don't remember that being in your brief either. Did you point out? Because he's been saying this whole time he didn't have the I-213s. I don't remember anything about him actually having them. Let me see. Oh, I'm sorry. I'm looking at the wrong page. Oh, okay. It's on page 55, line 12. The immigration judge asked if he's received the notice of peers. He says, we have not, Your Honor. I do have the notice of peer dated May 20th, 2018 for the lead respondent. I have no NTA for the juvenile. How do we know that includes the I-213? Well, the I-213 was issued that same date, and it indicates the basis. If you look at the 213s, they indicate the basis for him being where he was located, the charge of removability. That's at least on page 72 of the father's. But the question, I think, is not when the 213 was issued. It's when he got a copy of the 213. And the passage you just pointed us to shows that he had the NTA, but it doesn't show that he had the 213 at the same time. No. I'm not saying he had the 213s at that point, but that the 213s often, that the NTAs usually mirror the 213s. I'm sorry. Okay. Well, sure, they usually do. But he, I mean, the point that Petitioner is making, and this was the point of my initial question, is that until he actually gets the 213, he doesn't know what they're going to be able to establish. And so why is it reasonable to expect him to file the asylum application until he's seen it? Your Honor, a lot of times in immigration court, they don't have the 213s when they are pleading. Well, I mean, okay, but I mean, maybe some people don't contest their cases as vigorously as they might, but why wouldn't somebody who wants to hold the government to its burden and says, you know, I'm not going to file the application that effectively concedes removability until I see them show up with some evidence to establish removability? They did at the hearing, and he contests saying he wasn't allowed to respond to that, but he said, you know, the immigration court manual, practice manual indicated he had 10 days, but that's not correct. Actually, the immigration court manual indicated that he could provide, contest it orally or at the hearing. I think the immigration manual just says if it's, if he's received 15 days, he's got 10 days. Well, under the section, what section is this? The immigration practice manual section, under chapter three, the B, small I, A, non-detained aliens, and in that last paragraph, it says, when a filing is submitted at least 15 days prior to a master calendar hearing, the response must be submitted within 10 days after the original filing with the immigration court. If a filing is submitted less than 15 days prior to a master calendar hearing, the response may be presented at the master calendar hearing either orally or in writing. Can I ask you about what counsel argued? Essentially, that there was an offer to submit the 589s before the immigration judge deemed the asylum applications to be abandoned. Any reason, anything in the record that contradicts that timing sequence? Because I thought it was somewhat important that the offer to file the 589s didn't happen until after the judge had deemed them abandoned. Here, we're finding out that it happened before, which brings it much more in line with the Arizmendi case, I believe. We don't know exactly when it happened, how far into the immigration judge's decision it happened. I mean, he had all during this hearing, when the judge was saying, you know, I'll trail this case for you to discuss the 213s with your client, he could have said, I can present the immigration, the applications, but he never did. It was only when the immigration judge was in the middle of his decision, which I've never seen before, and I've been doing this a long time, Your Honor, I've never seen that happen, and them say, oh, yes, we can now, you know, we can file the applications. I mean, he had all that time during the hearing and never said a peep about it. But is there anything in the record that disputes that sequence of events, that counsel offered to file the 589s? The immigration judge said no, and then the immigration judge deemed them to be abandoned? I mean, we just have what the record says. We don't have any other indication. And he was able to present what he had, indicate what he had, what had been said, you know, off record. I mean, suppose that we think that the best reading of the record is that before the decision was entered, counsel did ask that the case be trailed so that he could, you know, go and file the 589. If we think that's what happened, why under Jaramendi-Medina was it not an abuse of discretion, or I'm not sure exactly what the standard is, but why was it not error for the IJ to deny the request to trail the case so that he could go file? I think at this point he was in the middle of his decision, you know, when he indicated, because when the immigration judge first asked him during that hearing, are they ready to file, if the application's ready to file, he said, no, they're not. So, you know, I mean, as far as the immigration judge knew, he didn't have them ready. And it's only when he's in the middle of his decision that he finds out, oh, yeah, we can maybe, you know, download them from, you know, the cloud. So you're relying on the fact that he, the IJ, had begun rendering the decision? Yes. And we just don't know how far into it he was, but he was already, I don't know, he could have been mid-decision, like later on in the decision or at the very beginning. We just don't know based on this record. If it had happened, suppose it had happened a moment before the decision began? That might have made a difference, that might have. I can't say for sure, but it might have. Why can't you say for sure? I mean, I'm not the judge, so I don't know how he would have ruled. Well, okay, but I guess the question is, would Erezmendi Medina have required him to grant the request if it were made before he began his decision? I'm not sure that that covers that situation. Why wouldn't it be arbitrary for the judge to deny the petitioner the ability to download and file the 589s? I mean, Erezmendi seems to counsel that the judge can't act in kind of an arbitrary way. Why wouldn't it be arbitrary for the judge to deny that before making a final decision? I don't think it was arbitrary for the judge to say no when the decision, like, you know, he's already had the hearing. He asked him in the beginning, are they ready to file? He says, no, we don't hear anything else about that until the middle of he's rendering his decision, and then all of a sudden, oh, yeah, I can, you know, download them from the cloud. That was the first time in that hearing that that was mentioned. Thank you. We have no further questions. I think we have a bit of time for rebuttal. The context of what was said with respect to ready to file or the knowledge the judge had about what was ready to file was in the context of discussing the 213. We are not ready to file the applications because the government has not met their burden or we have not had the opportunity to meaningfully respond to the I-213. That was the context in which that statement was made. It was then clarified prior to the judge entering his order, as it was said, off the record. Now, that conversation actually should have been on the record. Why the court shut down the record at that point should not weigh against the respondent. It should have been recorded on the record, and I believe the judge understood that, and that's why after the entering of the decision, he allowed us to make a record of what was stated. I think it probably was an error in that it wasn't recorded, and I believe the judge did his best attempt in this case was to give us the opportunity to make a record that would accurately reflect kind of the timing and sequence of what had occurred. So the government's argument seems to be that the beginning of the IJ's rendering of his oral decision is the key moment, and because you didn't make this request before that moment, it was too late. What's your response to that? Well, I believe if the order had been completely made and entered and I came back and asked to be recalled that day in order to file these applications, I think you might have an issue there that the proper avenue for this would have been a motion to reconsider or a motion to reopen with the application having been completed, right? But because he was still in the process of entering that order, I don't believe that that's accurate. And I do believe that Gerozano is actually instructive on this. I mean, in Gerozano, there's an actual order of removal. An absentia order of removal has already been submitted, and in that, they said, when the person shows up and says, look, I'm here now to take care of this. I'm here to be present in this case. The judge was ordered. It was not found appropriate to not reopen the case on that day and allow them to proceed with their master calendar hearing. I believe that's what Arizmendi cites to Gerozano as kind of the basis upon which the filing of an application on the same day should have been permitted. Thank you. Thank you both sides for the helpful arguments. This case is submitted.
judges: FRIEDLAND, MILLER, Scarsi